## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| EXTREME COATINGS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 12-516C |
| | )   (Judge Bush) |
| THE UNITED STATES, | ) |
| | ) |
| Defendant. | ) |

### DEFENDANT'S MOTION TO DISMISS COUNTS I, II, III, IV, V AND PORTIONS OF COUNT IX OF PLAINITFF'S COMPLAINT

Pursuant to Rule 12(b)(6) of the Rules of the Court of Federal Claims (RCFC), defendant, the United States, respectfully requests that the Court dismiss the portions of the complaint filed by plaintiff, Extreme Coatings, Inc. (ECI), that assert claims for differing site conditions and delay associated with high water in Big Horn Lake.  Because ECI's complaint lacks factual allegations that each differing site condition existed at the time of contract execution, and because ECI seeks compensation for an act of God, the Court should dismiss those portions of ECI's complaint for failure to state claims upon which the Court can grant relief.[1]

### ISSUES PRESENTED

1.      To state a viable claim for a differing site condition, a contractor must allege facts showing that the differing condition existed at the time of contract execution.  Such an allegation serves as a predicate for the claim and, at the merits stage of the proceedings, must support a finding by a preponderance of the evidence.  Does ECI's complaint contain an allegation that each purported differing site condition existed at the time of contract execution?

---

[1] RCFC 12(a)(4) tolls the time within which the Government must file its answer.  However, out of an abundance of caution, we affirmatively request that the Court, in resolving this motion, order that the Government's answer related to the unchallenged portions of the complaint be due 14 days after the Court's decision on this motion.

2.     Unless expressly assumed by a party to a contract, neither party is liable to the other for damages associated with an act of God.  The alleged high water levels in Big Horn Lake are an act of God.  Do the allegations in Count V for a differing-site-condition for high water and the portions of Count IX related to delay for high water, even if true, fail as a matter of law because they seek compensation for an act of God?

## STATEMENT OF THE CASE

### I.     Nature Of The Case

This is a commercial dispute.  ECI alleges that it is entitled to compensation for maintenance work performed pursuant to a June 2009 contract with the Bureau of Reclamation (Reclamation or the Government).  In particular, ECI seeks an adjustment of the contract price to include an additional $488,481.96, as well as unspecified compensation for the "negative cost impacts" purportedly caused by Government delays.

### II.    Factual Background[2]

In April 2009, Reclamation issued a request for proposal to partially recoat the downstream side of the spillway radial gates at Yellowtail Dam in southern Montana.  Compl. ¶ 4.  Reclamation sought several deliverables, including the temporary water-sealing of the gates, the sand-blasting of the gates, some structural work, and the application of new coating to the gates.  *Id*. ¶ 5.  After making a site visit, ECI submitted a proposal for the work.  *Id*. ¶¶ 9-10.

In June 2009, after negotiations between the parties, Reclamation awarded ECI the contract.  *Id*. ¶ 12.  The contract envisioned two phases of work.  The second phase (Phase II), involving a portion of the gates known as the counterweight bracket support, was to be

---

[2] These facts come from ECI's complaint.  By this motion, the Government does not admit, or otherwise concede the validity of, any of these facts.  *See Cambridge v. United States*, 558 F.3d 1331, 1335 (Fed. Cir. 2009) (explaining that the Court, in resolving a motion under rule 12(b)(6), should assume all well-pleaded allegations are true).

completed within 45 days of when the surface elevation of the water in Big Horn Lake, the reservoir created by Yellowtail Dam, reached 3,630 feet.  *Id*. ¶¶ 7-8, 15, 151.  All other work (Phase I) was to be completed within 120 days after ECI's receipt of the notice to proceed.  *Id*. ¶ 14.

On June 11, 2009, Reclamation issued the notice to proceed, which ECI received on June 15, 2009.  *Id*. ¶ 16-17.  Accordingly, Phase I was to be completed by October 10, 2009.  *Id*. ¶ 18.  ECI began performance on August 10, 2009, but on September 29, 2009, it requested an extension to complete Phase I.  *Id*. ¶ 33.  Reclamation granted this request, extending the completion date to November 13, 2009.  *Id*. ¶¶ 34-36.  In December 2009, Reclamation acknowledged that the "interim substantial completion" date for Phase I was November 18, 2009.  *Id*. ¶¶ 53, 55.  However, because ECI was unable to complete all of the Phase I work before the onset of winter conditions, the parties agreed that the remaining Phase I work would be completed as part of Phase II.  *Id*. ¶¶ 54, 56.

In the spring of 2010, ECI's mobilization to complete the remaining work was delayed by high water elevations and other weather conditions.  *Id*. ¶¶ 59-61.  Reclamation approved ECI's delayed mobilization, establishing that the 45-day period for the performance of Phase II started on April 14, 2010 and ended on May 29, 2010.  *Id*. ¶¶ 62-63.  The contracting officer subsequently extended the completion date to June 12, 2010.  *Id*. ¶ 76.

Work continued and, in May 2010, the contracting officer directed ECI to demobilize by June 12, 2010 because "the radial gates of Yellowtail Dam had to be opened due to unforeseen emergency conditions occurring in the Project area during summer 2010."  *Id*. ¶¶ 80-84.  ECI demobilized from the site.  *Id*. ¶ 84.  In August 2010, ECI remobilized, continued working, and

demobilized for the last time on October 3, 2010. *Id*. ¶¶ 86-93. On October 22, 2010, Reclamation determined that all work and submittal requirements had been completed. *Id*. ¶ 94.

In May 2011, ECI submitted to Reclamation a "certified claim," which sought additional compensation for differing site conditions, defective specifications, constructive changes, breach of warranty, inefficiencies the fault of the Government, and overreaching by a Government official. *Id*. ¶ 97. In August 2011, the contracting officer granted a small adjustment for a portion of the claim, but otherwise denied the claim. *Id*. ¶¶ 98-99.

In August 2012, ECI filed this appeal of the contracting officer's decision. ECI alleges that (1) it encountered differing site conditions, *id*. Counts I-V; (2) Reclamation made constructive changes to the contract, *id*. Counts VI-VII; (3) the specifications were defective, *id*. Count VIII; and (4) it is entitled to compensation for Government delays, *id*. Count IX.

## ARGUMENT

Absent an allegation that each of the asserted differing conditions in Counts I-V existed at the time of contract execution, there is no factual predicate upon which ECI could ultimately be granted relief on those counts. Additionally, because Count V and Count IX seek compensation for an act of God, ECI cannot prevail on those counts as a matter of law. Accordingly, the Court should dismiss ECI's complaint in part.[3]

### I.    Legal Standard For A RCFC 12(b)(6) Motion

A motion to dismiss pursuant to RCFC 12(b)(6) should be granted when a plaintiff alleges facts that do not entitle it to a legal remedy. *See Godwin v. United States*, 338 F.3d 1374, 1377 (Fed. Cir. 2003). Under RCFC 8(a), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The United States Supreme Court has

---

[3] By this motion, the Government does not challenge Counts VI, VII, VIII, and the portion of Count IX unrelated to delay for high water.

explained that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The allegations of the complaint must show more than "a sheer possibility that a defendant has acted unlawfully." *Id*.  The Court should assume well-pleaded facts alleged in the complaint are true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).  But a complaint's legal conclusions are not entitled to deference.  *See id*.

II.     The Court Should Dismiss ECI's Differing-Site-Condition Counts Because The Complaint Lacks Allegations That Each Differing Condition Existed When The Contract Was Executed

ECI's complaint contains five counts that purport to allege differing site conditions.  Counts I and V assert type-I differing site conditions for the design of the "vertical side seal assembly" and the water levels in Big Horn Lake, respectively.  *See* Compl. ¶¶ 104-18; 149-64.  Counts II, III, and IV assert type-II differing site conditions for the hardness and rigidity of the rubber seal, *id*. ¶¶ 119-27; rust on the "side seal retainer bar," *id*. ¶¶ 128-37; and rust and related exfoliation on other portions of the radial gates, *id*. ¶¶ 138-48, respectively.  The Court should dismiss these counts because ECI's factual allegations, even if true, do not entitle it to relief.

To establish a type-I differing site condition, ECI must prove the existence of "'subsurface or latent physical conditions at the site which differ materially from those indicated in this contract.'" *Randa/Madison Joint Venture III v. Dahlberg*, 239 F.3d 1264, 1269 (Fed. Cir. 2001) (quoting 48 C.F.R. § 52.236-2 (2000)).[4]  To establish a type-II differing site condition, ECI must prove the existence of an "'unknown physical condition[] at the site, of an unusual

---

[4] ECI alleges that the contract here incorporates section 52.236-2.  Compl. ¶ 13.

5

nature, which differ[s] materially from those ordinarily encountered and generally recognized as inhering in work of the character provided for in the contract.'" *Id.* at 1276 (quoting 48 C.F.R. § 52.236-2). However, the differing-site-condition clause is limited to only those differing conditions "existing when the contract was executed." *Olympus Corp. v. United States*, 98 F.3d 1314, 1316-18 (Fed. Cir. 1996). *See also John McShain, Inc. v. United States*, 375 F.2d 829, 833 (Ct. Cl. 1967) (explaining that the changed-conditions clause refers to a "condition *at the time of contracting* not something discovered later" (emphasis added)). Thus there is a temporal aspect to a differing-side-condition claim: a differing condition that occurs or arises during performance is not, as a matter of law, a "differing site condition."

Consistent with this precedent, ECI may be entitled to relief for a differing site condition only if it proves that, among other things, each allegedly different condition existed on or before June 3, 2009, the day of contract execution. Compl. ¶ 12. Because the differing-site-condition clause applies only to conditions extant at contract execution, ECI was therefore required to allege facts that each purported differing condition actually existed at that time. But the complaint contains no allegations—whatsoever—that these conditions existed at the time of contract execution, much less the well-pleaded allegations necessary to survive a motion to dismiss. This is a fatal defect in ECI's pleading.

At the motion-to-dismiss stage, ECI is not required to prove its case. But its pleadings must allege facts that, if later proven, would entitle it to relief. *See* RCFC 8(a) (requiring that the complaint contain allegations "showing that the pleader is entitled to relief"). And without an allegation (and later evidence) that each allegedly differing condition existed at the time of contract execution, there can be no recovery for a differing site condition. *See Olympus Corp. v. United States*, 98 F.3d at 1316-18 (denying recovery for a differing site condition when soil

contamination and labor dispute developed after the contract was executed); *Turnkey Enter., Inc. v. United States*, 597 F.2d 750, 759 (Ct. Cl. 1979) (denying recovery for a differing site condition when condition occurred "almost 2 months after execution of the contract"); *John McShain, Inc.*, 375 F.2d at 832-34 (denying recovery for differing side condition when water main broke after performance had begun). ECI has failed to state a claim upon which relief could be granted for Counts I, II, III, IV, and V.

III. The Court Should Dismiss ECI's Complaint To The Extent That It Seeks Compensation For The High Water Level In Big Horn Lake, Which Is An Act Of God

To the extent that ECI seeks compensation flowing from high water levels in Big Horn Lake, the Court should dismiss the complaint. Compl. ¶¶ 149-64, 190-96. In Count V, ECI alleges a type-I differing site condition in that the water levels in Big Horn Lake were higher than those "warranted" in the solicitation and that the "higher elevations negatively impacted performance of the Project work" by requiring additional diving expenses. Compl. ¶¶ 158, 160-62. In Count IX, ECI seeks compensation for delay, which appears to also stem, at least in part, from the high water. Compl. ¶¶ 164, 190-96. ECI has failed to state a claim upon which relief can be granted for these claims because, even if the pertinent allegations are true, the Government is not liable, as a matter of law, for an act of God.

The rule is well-established that "neither party to a contract is responsible to the other for damages through a loss occasioned as a result of an act of God, unless such an obligation is expressly assumed." *See Turnkey Enter.*, 597 F.2d at 754 (internal quotation marks omitted); *Tombigbee Constr. v. United States*, 420 F.2d 1037, 1043 (Ct. Cl. 1970). *See also Sec. Nat'l Bank v. United States*, 397 F.2d 984, 990 (Ct. Cl. 1968) ("The [Government] is not liable in damages for delay caused by acts of God.").

Count V and the portions of Count IX related to delay associated with high water fail as a matter of law because the alleged high water in Big Horn Lake, which is fed by the Big Horn River and its tributaries, is an act of God.  *See Turnkey Enter., Inc.*, 597 F.2d at 754 (acknowledging rule and explaining that "flow of the river and rainfall are so intertwined as to make it impossible to separate the river conditions from the weather"); *Sec. Nat'l Bank*, 397 F.2d at 990 (describing high water as an "act[] of God" and denying contractor's claim related thereto); *Amino Bros. Co. v. United States*, 372 F.2d 485, 490 (Ct. Cl. 1967) (concluding that "heavy rainfall and natural run-off" was "clearly an Act of God for which [the Government] could not be responsible"); *John Massman Contracting Co. v. United States*, 23 Cl. Ct. 24, 31 (1991) (denying claim related to high water and explaining that "because plaintiff's delays were the result of weather, and not the fault of the government, there can be no recovery under the differing site conditions clause"); *Util. Contractors, Inc. v. United States*, 8 Cl. Ct. 42, 45 (1985) ("[R]ain weather conditions do not constitute a valid basis for a differing site condition claim."), *aff'd* 790 F.2d 90 (Fed. Cir. 1986).  *Cf. Arundel Corp. v. United States*, 103 Ct. Cl. 688, 711-12 (1945) (finding no differing site condition when a storm altered scope of contractor's duties).

Even accepting ECI's allegation that the water levels encountered at Big Horn Lake in 2009 and 2010 were higher than the historical "average end of month" levels described in the solicitation, Compl. ¶¶ 151-52, 157-58, this higher water level is not chargeable to the Government.  Simply put, "[t]he Government is not an insurer against acts of nature." *Security Nat'l Bank*, 397 F.2d at 990.  And ECI does not allege that the Government assumed liability for higher water levels in Big Horn Lake by contract.  *See Spirit Leveling Contractors v. United States*, 19 Cl. Ct. 84, 96 (1989) ("Where a contract does not specifically allocate liability, neither party to that contract is responsible to the other for damages caused by an act of God.").

Consequently, the Court should dismiss Count V and the portion of Count IX that seeks to recover delay damages associated with high water.[5]

## CONCLUSION

For these reasons, we respectfully request that the Court dismiss Counts I, II, III, IV, and V of ECI's complaint. We also request that the Court dismiss ECI's complaint to the extent that it seeks compensation for high water levels (Counts V and Count IX).

Respectfully submitted,

STUART F. DELERY
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Steven J. Gillingham
STEVEN J. GILLINGHAM
Assistant Director

s/ Alex P. Hontos
ALEX P. HONTOS
Trial Attorney
Department of Justice
Civil Division
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 514-4643
Fax: (202) 514-8640

October 12, 2012                               Attorneys for Defendant

---

[5] Even assuming, for the sake of argument, that the amount of water in a reservoir fed by melting snow and rainfall was not an act of God, ECI's claim fails because it has not alleged facts to show that the high water level encountered at Big Horn Lake was the Government's fault. *See Turnkey Enter., Inc.*, 597 F.2d at 754 (noting that the liability for differing site conditions is tied to "an[] act or fault of the government").